M. A. SMITH, Respondent, v. SAN PEDRO, LOS ANGELES & SALT LAKE RAILROAD COMPANY, a Corporation, Appellant.

No. 1975. Decided March 23, 1909 (100 Pac. 673).

1. NEGLIGENCE—ACTIONS—PROOF—VARIANCE. Plaintiff must recover upon the negligent acts alleged, and not upon entirely different acts. (Page 395.)

2. RAILROADS—INJURIES TO ANIMALS—PLEADING—VARIANCE. In an action against a railroad company for killing sheep on the track which ran through a street, where plaintiff alleged the existence of an ordinance limiting the speed of trains to 8 miles an hour, and that defendant's train at the time was running forty miles an hour, and that defendant, knowing that the sheep were on the track, so negligently and carelessly ran the train at such a high speed as to make it difficult to control, and negligently ran it into the sheep, the violation of the ordinance was not the gist of the cause of action or essential thereto, so that failure to prove it was not a fatal variance. (Page 395.)

3. RAILROADS—REGULATION—OPERATION AND EFFECT. Statutes and ordinances requiring certain precautions of railroads in running trains for the public safety do not exclude their general common-law obligation to use due care and diligence; they being bound to do so even in absence of statute. (Page 396.)

4. RAILROADS—INJURIES TO ANIMALS—RIGHT OF ACTION. If a railroad, knowing that sheep were on the track, so negligently and carelessly ran the train as to run over and injure them, it was liable. (Page 396.)

5. RAILROADS—INJURIES TO ANIMALS—ACTIONS—SUFFICIENCY OF EVIDENCE—NEGLIGENCE. In an action for injuries to sheep on the track, evidence *held* to show that defendant railroad company, knowing the sheep were on the track, negligently ran the train into them. (Page 396.)

6. RAILROADS—INJURIES TO ANIMALS—ACTIONS—ADMISSIBILITY OF EVIDENCE—NEGLIGENCE. In an action for injuries to sheep which were being driven along a street through which defendant's railroad ran, plaintiff could show that at certain times of the year large numbers of sheep were driven along the highway at that place, as bearing upon the care required of the trainmen at that place during such time.[1] (Page 397.)

7. RAILROADS—CROSSINGS—MUTUAL RIGHTS AND DUTIES. One driving sheep along a public street through which a railroad ran was not a trespasser; the rights and duties of the drover and the railroad in the street being mutual and reciprocal. (Page 399.)

8. TRIAL—INSTRUCTIONS—CHARGE AS A WHOLE. In an action for killing sheep on defendant's track which ran through a public street, plaintiff alleged a violation of a speed ordinance and negligence generally in operating the train, and the court instructed that defendant must operate the train with reasonable care, dependent upon the circumstances, and as the probability of danger increased a higher degree of care was required, so that the jury should "look to the circumstances of the case and determine from them, and from what was done under the circumstances, or what was not done which could have been done, and from all the evidence," whether defendant exercised ordinary care, and in other instructions specifically pointed out the acts of negligence alleged, and stated that there was no proof of a violation of the ordinance and to disregard that allegation, and, after charging in detail as to the law applicable to the other acts of negligence alleged, instructed that plaintiff could not recover unless he proved the negligence alleged in his complaint. *Held*, that the part of the charge quoted, when considered in connection with the other instructions, could not have been understood by the jury to authorize a recovery for negligent acts not alleged in the complaint. (Page 397.)

9. RAILROADS—INJURIES TO ANIMALS—NEGLIGENCE—CARE REQUIRED. One driving sheep in a street through which a railroad ran not being a trespasser, the railroad was bound, not only to operate its train with due care after discovering the peril of the sheep

[1] Christensen v. O. S. L. R. Co., 29 Utah 192, 80 Pac. 746.

on the track, but to exercise care in anticipation of dangers which might be expected to arise from the proper use of the highway by the public, and would be liable for injuries to the sheep caused by its failure to do so.  (Page 399.)

10. APPEAL AND ERROR—HARMLESS ERROR—PREJUDICIAL EFFECT—FA-
    VORABLE TO COMPLAINING PARTY. Defendant cannot complain of an erroneous instruction favorable to itself and prejudicial to plaintiff, and hence could not complain that the instruction favorable to itself conflicted with another instruction on the subject, which correctly stated the law.[2]  (Page 399.)

APPEAL from the Fourth District Court, Utah County.— *Hon. J. E. Booth,* Judge.

Action to recover damages alleged to have been sustained by the plaintiff by the defendant's negligence in running a train of cars over his sheep on a public highway. From a judgment for plaintiff the defendant appealed.

AFFIRMED.

*Pennel Cherrington* and *W. E. Rydalch* for appellant.

*D. D. Houtz* and *A. J. Evans* for respondent.

STRAUP, C. J.

This is an action to recover damages alleged to have been sustained by the plaintiff by the defendant's negligence in running a train of cars over his sheep whilst he was driving them along a public highway. After alleging in his complaint that he was driving about three thousand head of sheep along the highway "just over the east boundary of the limits of American Fork City," in Utah county, and that there was an ordinance of that city "forbidding the defendant to run or operate its trains through or within the corporate limits of the said city at a greater rate of speed than eight miles per hour," the plaintiff further alleged that

[2] Wood v. Railroad, 28 Utah 351, 79 Pac. 182.

"notwithstanding the said ordinance, however, at the time of the wrongs and injuries hereinafter complained of, the defendant, by its agents, servants, and employees, was operating the train hereinafter stated at a high rate of speed, to wit: forty miles per hour, as it passed from the corporate limits of said city out upon the said highway where the plaintiff's sheep were; and then and there, and while said sheep were upon the said track as aforesaid, the defendant, well knowing the said sheep were upon the said track, and disregarding its duty in that respect, so carelessly and negligently ran the said train through the said city as to make it difficult of control, and so carelessly and negligently managed the locomotive and train then and there being operated by it, that it ran the said locomotive and train into the said flock of ewe sheep, thereby running the same against and over many of the said sheep," and then and there killed and wounded about eighty-four head of the sheep. The defendant denied the negligence alleged in the complaint and pleaded contributory negligence. The jury rendered a verdict for the plaintiff.

The defendant on appeal contends that the court erred in refusing to grant its motion for nonsuit and to direct a verdict in its favor, in admitting certain evidence, and in giving certain instructions to the jury. The plaintiff gave evidence tending to show that at the place of the accident the railroad track ran along and in a public street or highway. The track itself was a few feet higher than the surrounding ground. Plaintiff's sheep, a herd of about three thousand head, were driven along the highway and were in charge of three men. The sheep were strung along the highway for a distance of about three hundred and fifty or four hundred yards. Two of the men were behind the sheep, and one of them was walking along with the herd between the sheep and the railroad track. The place of the accident was about three hundred yards from a curve in the track; the curve being at the place where the railroad track entered the highway. As the train approached the highway, the man in the

rear of the sheep called to the others that a train was approaching. About twenty-five or thirty head of the sheep were then on the railroad track. Two of the men mounted their horses and rode along the track and endeavored to get the sheep off and away from the track. The train consisted of a locomotive, a baggage car, and two passenger cars. As it approached it was running at the rate of from fifteen to twenty miles an hour, and as it rounded the curve the engineer had his head out of the cab and was looking in the direction of the sheep. After seeing the sheep he leaned back in the cab and increased the speed of the train. Because of the rapidity of the train, the men were unable to get the sheep off the track, and, in the confusion, a number of other sheep got on the track, and about eighty-four of them were run over by the train and were killed and disabled. The train did not stop, but slowed up as it struck the sheep. It was also shown that a train equipped as that train was, and running at a speed of from fifteen to twenty miles an hour, could have been stopped within a distance of five hundred feet under ordinary circumstances, and if the rails were wet, and the wheels "skidding," it could have been stopped within a distance of seven hundred feet; and if it was running at a speed of forty miles an hour (as testified to by the train operatives), it could have been stopped on wet rails within a distance of nine hundred feet. It was further shown that the train operatives, as they rounded the curve, had a clear and unobstructed view of the track ahead of them and of the sheep along the highway. The engineer of the train testified, on behalf of the defendant: That the regular schedule time at the place in question was twenty-eight miles an hour, but that the train was twenty minutes late, and as they rounded the curve the train was running forty miles an hour; that as he rounded the curve he saw the sheep along the highway and saw a few of them, probably a dozen or more, on the track ahead of him; that he whistled and made an application of air, and sheep ran back over the track; that a dog got after them and drove a number of the sheep

on the track, about sixty feet in front of the train; and that he then reversed and applied the brakes, but it was not possible to prevent the injury within that distance. No proof was made of the existence of the ordinance averred in the complaint.

The principal ground urged by the appellant in support of the assignment of errors that the court erred in refusing to grant a nonsuit and to direct a verdict is that the plaintiff, having averred in his complaint that an ordinance existed restricting the speed of trains to eight miles an hour within the corporate limits of American Fork, and that the train was operated in violation of the ordinance, his action was grounded on the ordinance, and to entitle him to recover it was essential to prove the ordinance and its violation, as alleged in the complaint. It is argued that to permit a recovery without such proof permits the plaintiff to allege one kind of negligence and to recover upon proof of another kind. It undoubtedly is the rule that the plaintiff was obliged to recover, if at all, upon the cause of action and upon the negligent acts alleged in his complaint, and not upon another and entirely different act of negligence; but permitting the plaintiff to recover without proof of the ordinance was not in violation of this principle. The gist of the plaintiff's action, as alleged, is that the defendant, knowing the sheep were on the track, ran and operated its train at such a high rate of speed as to make it difficult of control, and so carelessly and negligently ran, managed, and operated the train that it ran into the sheep and injured them. The averment and proof of the ordinance was not an essential to a good and complete cause of action, and was not an essential to the cause of action alleged in the complaint. Statutes and ordinances "demanding precautions of railway companies in running their trains, for the promotion of the public safety, do not exclude the general obligation under which such companies rest by the principles of the common law, to exercise diligence and care; but that the railroad company is required to take reasonable

measures for the safety of the public, although such measures may not be prescribed by any existing statute. Hence the fact that a statute provides for certain precautions at a railroad crossing will not relieve a railroad company from adopting such other measures as public safety and common prudence dictate." (2 Thomp. Neg., sec. 1494.) "The duty may rest upon it, in the exercise of reasonable care for the safety of travelers upon the roads and streets, to run its trains at a less rate of speed than that prescribed by statute or ordinance." (2 Thomp. Neg., secs. 1902, 13.) The pleaded ordinance itself furnished no cause of action. Its existence "was only a fact bearing upon the conduct of the managers of the train, and whether the defendant was guilty of negligence at the time and place, resulting in loss to the plaintiff, depends upon all the facts legally bearing upon their action. If defendant was running its train in violation of law at the time, such fact is competent evidence in support of the charge of negligence." (*Robertson v. Wabash, St. L. & Pac. Ry. Co.*, 84 Mo. 119.) And, as held in some jurisdictions, the running of the train in violation of a statute or ordinance is negligence *per se*. Whether the fact be regarded as evidence of negligence, or negligence *per se,* matters not, for it is not the ordinance itself which creates the right and gives an exclusive remedy for the vindication of that right, and which alone must be pursued. The averments in the complaint that the defendant, well knowing the sheep were on the track, so negligently and carelessly ran, managed, and operated, and controlled the train as to run it into the sheep and injure them, within themselves, state a good cause of action. (*Borneman v. Chicago, etc., Ry. Co.*, 19 S. D. 459, 104 N. W. 208.) The evidence adduced was sufficient to support these averments. The motions to grant a nonsuit and to direct a verdict were therefore properly overruled.

The plaintiff, over the defendant's objection, was permitted to show that, at and along the place in question, the highway, between April 1st, and May 1st, was frequently

used for drovers' purposes, and that between such dates as many as one hundred thousand head of sheep, in herds of from one thousand to three thousand head, were driven along the highway at different times. It is urged that while it might have been material to show that sheep had frequently and habitually been driven upon and along the defendant's track at the place in question, still it was wholly immaterial to show that sheep had been frequently driven along and upon the highway at such place. We think the evidence was properly received as bearing upon the question of vigilance and care to be observed by the train operatives in operating trains along such place at the time in question. (*Christensen v. O. S. L. R. Co.,* 29 Utah 192, 80 Pac. 746.)

Among other instructions the court gave the following: "It was the duty of the railroad company to operate its train with ordinary and reasonable care and prudence. What would be reasonable and ordinary care and prudence must depend upon the circumstances. As the likelihood of harm to others increases, as the dangers grow greater, ordinary care and prudence suggest a higher degree of vigilance and attention to avoid what grows more likely to happen without such increased watchfulness; and, on the other hand, as the likelihood of harm to others grows less and the danger grows less, a lesser watchfulness and attention is demanded by such care and prudence. So therefore you are to look to the circumstances of the case and determine from them and from what was done under the circumstances, or what was not done which could have been done, if anything, and say from all the evidence in the case whether or not the defendant, by its servants, was in the exercise of reasonable and ordinary care for the safety of travelers upon the highway at the time of the injury." It is contended that this instruction, especially the language "you are to look to the circumstances of the case and determine from them, and from what was done under the circumstances, or what was not done which could have been

done, if anything, and say from all the evidence in the case whether or not the defendant" exercised reasonable and ordinary care, permitted the jury to base a verdict upon an act or acts of negligence not alleged in the complaint; that is, it is urged that the jury were permitted to find, and may have found, a verdict based upon some act or omission not complained of and alleged in the complaint as an act of negligence, but which they may have regarded, from all the circumstances, should have been done but was not done. When all portions of the charge bearing on the question are read together, and the charge is considered as a whole, we do not think the instruction is open to such a contention. In other portions of the charge the court specifically pointed out to the jury the particular acts of negligence alleged in the complaint, charged them that there was no proof of the averment relating to the ordinance and to disregard and not consider it, and after charging them in detail with respect to the law applicable to the other acts of negligence alleged, further charged that the plaintiff was "not entitled to recover in this action unless you believe that he has proven, by the greater weight of the evidence, the negligence alleged by him in his complaint." It cannot fairly be presumed that the jury understood the language complained of to apply to acts of commission or omission not alleged in the complaint, or that they understood that they were at liberty to so apply it, or that they did so.

The court further charged the jury that in approaching, and operating a train along, a public highway, it was the duty of the defendant to use ordinary and reasonable care and prudence in the management of the train, and in other portions of the charge instructed them what was meant by "ordinary care," and left the question to the jury to determine, upon all the evidence adduced, whether such care had been exercised by the defendant with respect to the acts complained of. It is urged by the appellant that the only question of negligence which should have been submitted to the jury was that of whether the defendants' servants were

guilty of negligence in operating the train after discovering the sheep on the track. This is not a case where the plaintiff was a trespasser. He was driving his sheep along a public street or highway. He had the undoubted right to do so. The railroad track was along and in the highway or street itself. In the main the rights of the parties were equal, and the duties which they owed to each other were mutual and reciprocal. A duty was owing from the defendant not only to operate its train with due care after discovering the sheep on the track and in a perilous situation, but also to use care in the operation of its train in anticipation of dangers that might reasonably be expected to arise from a proper use of the highway by the public. We think the charge in this respect was correct. True, this portion of the charge, as is urged by the appellant, is somewhat in conflict with other portions of the charge, wherein the court instructed the jury that a duty to use care was only imposed after the train operatives discovered the sheep on the track and to render a verdict for the defendant if the train operatives "did not actually know of the presence of the sheep upon the railroad track in time to have stopped the train before striking them." But the defendant cannot complain of that, for the reason that the latter instruction, when applied to the facts of the case, was an erroneous statement of the law in favor of, and not to the prejudice of, the defendant, but to the prejudice of the plaintiff. (*Wood v. Railroad*, 28 Utah 351, 79 Pac. 182; *Lobdell v. Hall*, 3 Nev. 515; *St. Joseph, etc., R. R. Co. v. Grover*, 11 Kan. 302; *Williams v. S. P. R. Co.*, 110 Cal. 457, 42 Pac. 974; *Reardon v. M. P. R. Co.*, 114 Mo. 384, 21 S. W. 731.) If the jury applied the law as stated in the first instruction, the defendant cannot complain, because the jury correctly applied the law applicable to the case. If, on the other hand, the jury applied the law as stated in the second instruction, the defendant cannot complain, because the law was applied by them more favorably to the defendant than it had a right to ask. Since the

instruction least favorable to the defendant was correct, the defendant could not have been prejudiced upon the ground that the two instructions were not harmonious.

Upon a careful consideration of the whole case, we find no reversible error in the record.

The judgment of the court below is therefore affirmed, with costs.

FRICK and McCARTY, JJ., concur.