<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-2154**

RICHARD BERMAN,

Plaintiff - Appellant,

and

MAURA FLYNN; SPEAKEASY VIDEO, LLC,

Plaintiffs,

v.

CURT JOHNSON; INDIE GENIUS PRODUCTIONS, LLC,

Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T. S. Ellis, III, Senior District Judge. (1:07-cv-00039-TSE-TRJ)

Argued: December 4, 2008              Decided: March 6, 2009

Before NIEMEYER, MICHAEL, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Hamilton Phillips Fox, III, SUTHERLAND, ASBILL & BRENNAN, L.L.P., Washington, D.C., for Appellant. Steve G. Heikens, Minneapolis, Minnesota, for Appellees. **ON BRIEF:** James J. Briody, SUTHERLAND, ASBILL & BRENNAN, L.L.P., Washington, D.C., for Appellant.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The plaintiff, Richard Berman, appeals the district court's declaratory judgment, which awards his co-plaintiff, Maura Flynn, and the defendant, Curt Johnson, joint ownership of the copyright in the film Your Mommy Kills Animals (YMKA). Specifically, Berman appeals the district court's refusal to include in the declaratory judgment a provision affirming that he has exclusive promotion and distribution rights to YMKA. The declaratory judgment was entered in post-trial proceedings after a jury had awarded Berman damages against Johnson for the latter's complete breach of the contract that gave Berman certain promotion rights in YMKA. Because we agree with the district court that it would constitute double recovery to grant Berman promotion rights after he had recovered damages for breach of contract, we affirm.

I.

Berman is the president of a public affairs firm, Berman and Company, and manages several non-profit organizations in that capacity. One of those organizations, the Center for Consumer Freedom (CCF), opposes the agenda of People for the Ethical Treatment of Animals (PETA), an organization that advocates animal rights. In his capacity as manager of CCF, Berman entered a contract with Maura Flynn and Curt Johnson to

3

produce a film, later titled <u>Your Mommy Kills Animals</u>, that would examine and criticize PETA's activities. The terms of the contract were laid out in a "Deal Memo" negotiated by the parties at a meeting in the fall of 2005. Under the Deal Memo Berman would invest $300,000 in the film (all of the expected cost), would have priority in having his investment repaid, and would receive $60,000 in profit on his investment. The Deal Memo also transferred exclusive promotion rights in YMKA to Berman's company, stating that "[a]ny contracts for promotion of said film . . . will be contracted through Berman & Company." J.A. 460. (Berman testified at trial that this promotion right was understood to include an exclusive distribution right as well.) Berman invested the $300,000 specified in the Deal Memo, plus an additional $10,000 during production of the movie to cover extra costs.

At the fall 2005 meeting in which the Deal Memo was agreed to, the parties also reviewed a written treatment (or outline) of the film, prepared by Flynn, that set out the film's proposed content, including its themes (the "treatment"). In 2006, disagreements arose regarding the treatment, as the film was being directed by Johnson. During this time Johnson received but repeatedly rejected recommended changes from Flynn. Upon its completion the film differed greatly from the treatment. Rather than focusing on a critique of PETA's

4

practices, as the treatment called for, the vast majority of the film -- roughly eighty percent -- was dedicated to a discussion of the trials and convictions of several members of Stop Huntingdon Animal Cruelty (SHAC), another pro-animal rights group. Further, the film presented the SHAC members as champions of free speech, and thus in a positive light. Only about twenty percent of the film involved any discussion of PETA.

Because the completed film varied from the treatment and their understanding of its proposed content, Berman, Flynn, and Flynn's company, Speakeasy Video, LLC sued Johnson for breach of contract, actual fraud, constructive fraud, and a declaratory judgment as to the ownership of the copyright. The breach of contract claim asserted that Johnson had not produced a film consistent with the treatment and that Johnson had "promoted[d] the film via the Internet, interviews, screenings, and by engaging a distribution consultant" in violation of Berman's exclusive promotion rights. J.A. 10. The declaratory judgment claim asked the court to recognize Speakeasy Video as the owner of the copyright in the film; it made no mention of any rights held by Berman. Johnson filed several counterclaims, including one for a declaratory judgment awarding him ownership of the copyright.

5

At trial the jury found in favor of Berman and Flynn on their breach of contract claims and in favor of Berman on his actual fraud claim. Berman was awarded $360,000 in damages for the breach of contract and $10,000 for the fraud claim. Following the jury trial, the district court turned to the declaratory judgment claims, directing the parties to file briefs on the issue of whether Speakeasy Video or Johnson owned the copyright in YMKA. In a memorandum responding to Johnson's request for declaratory relief, Berman asked that any declaration of Johnson's copyright rights in YMKA recognize that the exclusive right to promote and distribute the film had been transferred to Berman in the Deal Memo. Following a hearing on the copyright issue, the district court declared that Flynn and Johnson were joint authors of YMKA, and thus co-owners of the copyright. In the same order, the district court denied Berman's request for a declaration adjudging him owner of the promotion and distribution rights, concluding that to grant Berman those rights after he had already recovered damages for breach of contract would constitute a double recovery. Berman now appeals that order.

II.

Under Virginia law a plaintiff in a contract action is "not allowed to recover for a breach of contract more than the

6

actual loss sustained by him, nor . . . to be put in a better position than he would have been had the wrong not been done and the contract not been broken." Orebaugh v. Antonious, 58 S.E.2d 873, 875 (Va. 1950). It follows that a party may not recover more than once for the same injury. See Nizan v. Wells Fargo Bank Minnesota National Ass'n, 650 S.E.2d 497, 502 (Va. 2007). At issue here is whether the jury's damages award to Berman took into account the loss of the promotion and distribution rights purportedly transferred by the Deal Memo. We agree with the district court that the jury, in finding a breach of contract and awarding damages, compensated Berman for all losses flowing from the breach. A declaration granting Berman the promotion and distribution rights, which had already been taken into account in the jury's damages award to him, would therefore amount to a double recovery.

At trial Berman asked for damages for the complete breach of his contract with Johnson, including Johnson's infringement upon Berman's promotion and distribution rights. This is made clear both from Berman's complaint and his closing argument at trial. The breach of contract claim in Berman's complaint states that "Johnson has and continues to promote the film via the Internet, interviews, screenings, and by engaging a distribution consultant." J.A. 10. Further, Berman's lawyer in closing argument stated that "[Johnson] breached the contract in

7

another way, too.  Mr. Berman was supposed to have exclusive promotion rights.  Mr. Johnson ignored those and went off on his own."  J.A. 374.

Berman's presentation of the violation of his promotion rights as part of the larger breach of contract means that the jury's $370,000 verdict in his favor accounts for his loss of these rights.  Returning exclusive promotion and distribution rights in the film to Berman after he had been awarded any damages for their loss as part of the contract's total breach would, as the district court concluded, result in a double recovery.  Accordingly, the declaratory judgment entered by the district court is

AFFIRMED.